[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 30, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13171
Non-Argument Calendar
_____

Agency No. A95-291-200

YARU LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 30, 2009)

Before DUBINA, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Yaru Lin petitions for review of the Board of Immigration Appeals' ("BIA")

decision, affirming the Immigration Judge's ("IJ") order denying her asylum, withholding of removal, and United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT") relief. The BIA found that Lin's asylum application was untimely because she did not produce clear and convincing evidence that it was filed it within one year of her arrival in the United States. The BIA also found that, due to a number of inconsistencies, Lin's testimony was not credible and, because Lin did not provide other corroborating evidence, Lin failed to meet the burden of proof necessary to obtain relief.

## I. Facts

Lin, a citizen of China, alleges that she came to America due to political persecution by the Chinese government. The substance of her allegations are as follows: in June 1998, Lin was approached by a friend who encouraged her to practice Zhong Gong,[1] a spiritual movement based on breathing and meditation which is similar to the banned practice of Falun Gong, because it would be beneficial to her health. Lin tried Zhong Gong, enjoyed it, and later founded her own Zhong Gong practice station. In January 2000, Lin was practicing in a park with approximately twenty other people. Three police officers arrived and told the

---

[1] The briefs, transcripts, and other documents submitted to this court sometimes spell "Zhong Gong" as "Zhuang Gong" and "Zhuong Gong." For the sake of consistency, this opinion uses the spelling "Zhong Gong."

group that they could not practice "because it was illegal." Lin was subsequently arrested and brought to a police station for interrogation, but was later released.

Despite the aforementioned incident, Lin continued to practice Zhong Gong. On May 8, 2001, two police officers came to Lin's job, took her to the police station, and proceeded to interrogate her. During the interrogation, one officer punched Lin in the chest and when she fell to the floor, kicked her in the back and hit her with an electrical baton. She was detained for thirty days and only released after signing a pledge promising to cease practicing Zhong Gong.

After being released, Lin was placed under police surveillance and fired from her job. Lin decided that she needed to escape the country and her father paid a friend to allow Lin to stowaway on his boat. The ship departed China on June 28, 2001 and arrived in Los Angeles on July 22, 2001. Lin alleges that her husband, who temporarily remained in China following Lin's departure, was harassed by police and he instructed Lin to never to return to China.

On February 1, 2002, Lin filed an application for asylum, withholding of removal, and CAT relief. On April 26, 2002, Lin was issued a Notice to Appear, which alleged that she entered the United States without being admitted or paroled by an immigration officer and that she was therefore subject to removal, pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act. Lin appeared and conceded removability, but alleged that she came to America due to political

3

persecution by the Chinese government. The IJ denied Lin's claims for asylum, withholding of removal, and CAT relief. Lin appealed to the BIA, which affirmed, concluding that Lin's application was untimely, her testimony was not credible, and she did not meet her burden of proving that it is more likely than not that she would be tortured by the Chinese government upon her return to the country.

## II. Discussion

### A. Asylum

This court must first determine whether we have jurisdiction to review Lin's claim for asylum.[2] We "review questions of subject-matter jurisdiction de novo." Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). "Pursuant to 8 U.S.C. § 1158(a)(2)(B), an application for asylum must be filed within one year of entering the United States," Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007), unless the alien can demonstrate the "existence of changed circumstances" relating to her eligibility for asylum or delay in filing her application. 8 U.S.C. § 1158(a)(2). Section 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination" made pursuant to § 1158(a)(2). This court has held that this language precludes federal court review of BIA determinations regarding

---

[2] As an initial matter, although the BIA considered the issue of CAT relief and Lin's brief restates the legal standard for CAT relief, she fails to argue that she satisfies that standard. Lin, therefore, has abandoned her claim for CAT relief. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

4

the timeliness of an asylum application or the "changed or extraordinary circumstances" exception. Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002). This jurisdiction-stripping provision remains in effect despite the passage of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (2005), which obligates courts to hear constitutional questions raised in an alien's petition for review. Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1231 (11th Cir. 2007).

The BIA expressly found that Lin had not met her burden of proving the timeliness of her petition and, therefore, did not consider the merits of her asylum petition. Lin nonetheless argues that she should be able to bypass this jurisdictional hurdle because the BIA's ruling violated the REAL ID Act. She reasons that by holding that her petition was untimely and therefore declining to examine the merits of her petition, the BIA violated her due process rights because it failed to consider all evidence in the record. This attempt to package a jurisdictional infirmity as a constitutional question is meritless because this court has held that the "timeliness of an asylum application is not a constitutional claim or question of law covered by the Real ID Act's changes." Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005). This court therefore lacks jurisdiction to examine the BIA's decision that Lin's asylum claim was untimely.

5

See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

Accordingly, we dismiss Lin's claim for asylum.

## B. *Withholding of Removal*

To qualify for withholding of removal under the Immigration and Nationality Act, an alien must show that she suffered past persecution or if returned to her country, it is more likely than not that her life or freedom will be threatened on account of protected ground. Sanchez Jimenez, 492 F.3d at 1238; see 8 U.S.C. § 1231(b)(3)(A). This court only reviews the decision of the BIA, except to the extent the BIA expressly adopts the IJ's opinion or reasoning.[3] Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "A factual determination by the BIA that an alien is statutorily ineligible for asylum or withholding is reviewed under the substantial evidence test." Perlera-Escobar v. Executive Office for Immigration, 894 F.2d 1292, 1296 (11th Cir. 1990). This test requires deference to the decision of the BIA "unless a reasonable factfinder would have to conclude" that the alien has satisfied her burden of showing a likelihood of future persecution. Najjar, 257 F.3d at 1284 (quotation marks and citation omitted).

---

[3] Lin's brief seeks to resolve several inconsistencies that were noted by the IJ. The BIA, however, did not adopt the IJ's entire opinion. Accordingly, this court may only review the BIA's analysis.

6

The BIA found that Lin's testimony was not credible. "If credible, an alien's testimony may be sufficient, without corroboration, to sustain his burden of proof in establishing his eligibility for relief from removal." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006). "Conversely, an adverse credibility determination alone may be sufficient" grounds upon which a petition for withholding of removal may be denied. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). The BIA must articulate its reasons for an adverse credibility determination and, once it has done so, "the burden is on the applicant alien to show that the [BIA's] credibility decision was not supported by specific, cogent reasons, or was not based on substantial evidence." Ruiz, 440 F.3d at 1255 (quotation and editing marks omitted).

Lin argues that the BIA erred in determining that she was not credible. We disagree. The BIA noted numerous unexplained discrepancies and omissions in Lin's testimony. For example, in Lin's asylum application she alleged that she was interrogated by police on June 6, 2001, prior to her release from jail, but in her testimony she indicated that after her initial interrogation on May 8, 2001, she was never again questioned. Her testimony did not include key events found in her asylum application, such as the fact that she was placed on residential surveillance following her release from detention. Moreover, some of Lin's testimony was directly contradicted by physical evidence. Lin testified that she stayed with her

7

father's friend for the five days preceding her departure for the United States, but this testimony was refuted by a Chinese hotel receipt in Lin's name dated July 24, 2001, only four days prior to her alleged departure. These inconsistencies called Lin's veracity into question, thus requiring her to introduce more evidence in order to sustain her burden. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) ("[t]he weaker an applicant's testimony . . . the greater the need for corroborative evidence"). The BIA noted, however, that Lin did not procure the testimony of her husband, despite his presence in the United States and the fact that he had allegedly received threats from the Chinese government due to Lin's practice of Zhong Gong.

The record reflects that the BIA gave specific, cogent reasons for its adverse credibility determination. Due to the inconsistencies in Lin's testimony and the dearth of evidence corroborating her account, we conclude that the BIA's decision was supported by substantial evidence. Accordingly, the record does not compel reversal of the BIA's determination that Lin is ineligible for withholding of removal. See Rodrigues Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007).

**PETITION DISMISSED IN PART AND DENIED IN PART.**